IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

IN THE MATTER OF THE SEARCH OF A
2007 WHITE FORD EDGE, NEW
HAMPSHIRE REGISTRATION 422 4260

Case No.   19-mj-97-01-DL

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Eric Joyal, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal
Rules of Criminal Procedure for a search warrant authorizing the examination of property—an
electronic device—which is currently in law enforcement possession, and the extraction from
that property of electronically stored information described in Attachment B.

2.      I am a Task Force Officer with the Alcohol, Tobacco, Firearms, and Explosives
(ATF), and have been since August of 2018. I have been involved in investigations relating to
offenses involving the unauthorized use and possession of firearms.

3.      I am also a Police Officer with the City of Manchester.  I have been so employed
since November of 2010. In April of 2011, I successfully completed The New Hampshire Police
Academy and obtained my certification as a full time police officer.  Soon after, I was assigned
to the Patrol Division of the Manchester Police Department. Some of my duties while assigned to
the Patrol Division included basic patrol duties, report writing, interviewing of witnesses and
suspects, evidence collection, and processing.

4.      In January of 2015, I became a member of the Manchester SWAT Team.  During my time on the SWAT Team, I have participated in the execution of numerous drug and firearm related search warrants. I have received specialized training in the detection and investigation of illicit drug trafficking, gang, and other criminal activity.

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.      The property to be searched is a 2007 White Ford Edge, New Hampshire Registration 422 4260, hereinafter "Vehicle," for cellular phone with IMEI No. 2970, and assigned phone number 603-    -4831, hereinafter the "Device."

7.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.      I have been involved into the activities of Guillermo Garcia Esquivel. The investigation relates to violations of Title 18, United States Code, Section 1951 (Interference with Commerce by Threats or Violence), and Title 18, United States Code, Section 922(g)(5)(A) (Unlawful Possession of a Firearm).

9.      Between January 5, 2019, and February 24, 2019, there have been seven reported convenience store armed robberies in Manchester, New Hampshire, that based on the investigation; appear to have been committed by the same individual. In all seven incidents, the suspect has been armed with a handgun and has been described similarly by witnesses. In

2

addition, video recovered from the incidents showed that the suspect has been the same person to include matching clothing, weapon, and mannerisms. The armed robberies occurred on January 5, 2019, January 15, 2019, January 26, 2019, February 2, 2019, February 8, 2019, February 15, 2019, and February 24, 2019.

10.     During this investigation, investigators identified a cell phone registered with T-Mobile in the name of Guillermo Garcia, the Device.  On March 14, 2019, I obtained a warrant seeking historic location data for the Device. I have received results from that warrant and have reviewed the results. The results include cell-site data, which identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the mobile telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Therefore, while the results demonstrate that the Device was in Manchester, New Hampshire at the time of each of these armed robberies, the results do not disclose the exact location of the phone.

11.     Through my training and experience, I know that conducting a forensic exam of a cell phone will provide more detailed GPS data then obtaining cell tower information from the provider.  Individuals also commonly also commonly have google accounts associated with cell phones, which, when the location settings are turned on, will show precise information of the location of the phone, to include a latitude and longitude.  Accordingly, cell-site data, like that I have reviewed for the Device, provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as Global Positioning Device ("GPS") data.  Cellular telephones can collect precision GPS data during the use of applications

such as the camera or mapping which can be recovered during a digital forensic examination of the cellular telephone

### February 15, 2019, 61 Best Market Robbery

12.      On February 15, 2019 at approximately 1842 hours, officers were dispatched to the 61 Best Market, 61 Maple Street, Manchester, New Hampshire, for a reported armed robbery. Upon arrival at the store, officers spoke with the clerk that was working during the robbery and reviewed the surveillance footage. Based upon surveillance footage, the offender appeared to be a white male wearing a charcoal gray hooded sweatshirt with hood up, blue jeans, a black facemask, and light gray footwear (boots or shoes). The offender pulled a firearm from his waistband and raised it as he walked to the front of the counter. Throughout the robbery, the offender was pointing the revolver at the clerk and appeared to be giving the clerk instruction by talking and pointing.  The clerk described the gun as a black gun with six bullets and stated that he could see into the cylinder. The gun that he described is consistent with a revolver and was confirmed by the surveillance footage. The clerk estimated that between $700 and $1,200 was stolen, depending on how sales were for the day.

13.      A review of the surveillance footage also shows that Esquivel purchased a beverage from 61 Best Market approximately 10 minutes before the February 15, 2019 robbery. Esquivel appears to be holding a cell phone while purchasing the beverage.

### Esquivel is Legally Prohibited from Possessing Firearms

14.      I have reviewed documents received from the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"). According to those records, Esquivel is a citizen of Mexico who entered the United States illegally and has not applied for any immigration benefits. Esquivel was served with an I-862 Notice to Appear before an

4

Immigration Judge for being present without inspection at a lawful port of entry. The records indicate that Esquivel failed to appear and I am aware that Esquivel has a deportation hearing scheduled for some time in 2020.

15.     Title 18, United States Code, Section 922(g)(5)(A) makes it unlawful for any person "who, being an alien—is unlawfully in the United States" to "possess in or affecting commerce, any firearm or ammunition."

### *April 11, 2019 Interview with Esquivel and Esquivel's Wife*

16.     On April 11, 2019, a traffic stop was conducted of the Vehicle.  Esquivel and his wife were in the vehicle. Esquivel was arrested on an unrelated state warrant. After Esquivel waived his *Miranda* rights, investigators interviewed Esquivel. Esquivel identified himself as the individual purchasing a beverage in the February 15, 2019 security footage from the 61 Best Market. Esquivel also stated that the Device is his cell phone and confirmed his phone number of ████-4831".  Esquivel denied committing the armed robbery. Esquivel declined to give investigators consent to search the Device and requested an attorney. The interview was concluded at that time.

17.     Esquivel's wife was also interviewed on April 11, 2019.  She identified Esquivel as the subject who was observed via surveillance footage conducting the robbery of 61 Market located at 61 Maple Street Manchester, NH on February 24, 2019.  She identified Esquivel via a still shot of him wearing a mask pointing a revolver in the direction of the clerk.

18.     The Device is visible in the center console area of the Vehicle by the shifter. The Vehicle is being securely stored at Manchester Police Department (405 Valley Street, Manchester, NH) pending this request for a search warrant.  On April 10, 2019, I obtained a

5

warrant to search Esquivel's residence and the vehicle.  That warrant, however, did not authorize

seizure or a search of the Device.

## **TECHNICAL TERMS**

19.     Based on my training and experience, I use the following technical terms to

convey the following meanings:

> a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular
>
> telephone) is a handheld wireless device used for voice and data communication
>
> through radio signals.  These telephones send signals through networks of
>
> transmitter/receivers, enabling communication with other wireless telephones or
>
> traditional "land line" telephones.  A wireless telephone usually contains a "call
>
> log," which records the telephone number, date, and time of calls made to and
>
> from the phone.  In addition to enabling voice communications, wireless
>
> telephones offer a broad range of capabilities.  These capabilities include: storing
>
> names and phone numbers in electronic "address books;" sending, receiving, and
>
> storing text messages and e-mail; taking, sending, receiving, and storing still
>
> photographs and moving video; storing and playing back audio files; storing
>
> dates, appointments, and other information on personal calendars; and accessing
>
> and downloading information from the Internet.  Wireless telephones may also
>
> include global positioning system ("GPS") technology for determining the
>
> location of the device.
>
> b.  Digital camera:  A digital camera is a camera that records pictures as digital
>
> picture files, rather than by using photographic film.  Digital cameras use a

variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.  Removable
storage media include various types of flash memory cards or miniature hard
drives.  Most digital cameras also include a screen for viewing the stored images.
This storage media can contain any digital data, including data unrelated to
photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a
handheld digital storage device designed primarily to store and play audio, video,
or photographic files.  However, a portable media player can also store other
digital data.  Some portable media players can use removable storage media.
Removable storage media include various types of flash memory cards or
miniature hard drives.  This removable storage media can also store any digital
data.  Depending on the model, a portable media player may have the ability to
store very large amounts of electronic data and may offer additional features such
as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its
current location.  It often contains records the locations where it has been.  Some
GPS navigation devices can give a user driving or walking directions to another
location.  These devices can contain records of the addresses or locations involved
in such navigation.  The Global Positioning System (generally abbreviated
"GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite

7

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers.  These signals are sent by radio, using specifications that

are publicly available.  A GPS antenna on Earth can receive those signals.  When

a GPS antenna receives signals from at least four satellites, a computer connected

to that antenna can mathematically calculate the antenna's latitude, longitude, and

sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used

for storing data (such as names, addresses, appointments or notes) and utilizing

computer programs.  Some PDAs also function as wireless communication

devices and are used to access the Internet and send and receive e-mail.  PDAs

usually include a memory card or other removable storage media for storing data

and a keyboard and/or touch screen for entering data.  Removable storage media

include various types of flash memory cards or miniature hard drives.  This

removable storage media can store any digital data.  Most PDAs run computer

software, giving them many of the same capabilities as personal computers.  For

example, PDA users can work with word-processing documents, spreadsheets,

and presentations.  PDAs may also include global positioning system ("GPS")

technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller

than a notebook that is primarily operated by touching the screen.  Tablets

function as wireless communication devices and can be used to access the Internet

8

through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g.  Pager:  A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network.  Some pagers enable the user to send, as well as receive, text messages.

h.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same
state.

20.     Based on my training, experience, and research, I know that the Device has
capabilities that allow it to serve as a wireless telephone, digital camera, portable media player,
GPS navigation device, and PDA.  In my training and experience, examining data stored on
devices of this type can uncover, among other things, evidence that reveals or suggests who
possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21.     Based on my knowledge, training, and experience, I know that electronic devices
can store information for long periods of time.  Similarly, things that have been viewed via the
Internet are typically stored for some period of time on the device.  This information can
sometimes be recovered with forensics tools.

22.     *Forensic evidence.*  As further described in Attachment B, this application seeks
permission to locate not only electronically stored information that might serve as direct
evidence of the crimes described on the warrant, but also forensic evidence that establishes how
the Device was used, the purpose of its use, who used it, and when.  There is probable cause to
believe that this forensic electronic evidence might be on the Device because:

> j.   Data on the storage medium can provide evidence of a file that was once on the
>      storage medium but has since been deleted or edited, or of a deleted portion of a
>      file (such as a paragraph that has been deleted from a word processing file).

k.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

l.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

m.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

n.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24.     *Manner of execution.*   Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25.     I submit that this affidavit supports probable cause for a search warrant authorizing the seizure and examination of the Device from the Vehicle described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Eric Joyal
Eric Joyal
Task Force Officer
ATF

Subscribed and sworn to before me on April  11 , 2019.

Daniel J. Lynch
United States Magistrate Judge

12

## **ATTACHMENT A**

The property to be searched is a 2007 White Ford Edge with New Hampshire

Registration 422 4260 (the "Vehicle") for a cellular phone with IMEI No. ▮▮▮▮▮▮ 970,

and assigned phone number 603 ▮▮▮-4831 (the "Device"), currently located in the Vehicle.

This warrant authorizes the forensic examination of the Device for the purpose of

identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      Cellular phone with IMEI No.          2970, and assigned phone number 603    -4831 (the "Device").

2.      All records on the Device .that relate to violations of Title 18, United States Code, Section 1951 (Interference with Commerce by Threats or Violence), and Title 18, United States Code, Section 922(g)(5)(A) (Unlawful Possession of a Firearm) and involve Guillermo Garcia Esquivel since January 1, 2019, including:

      a.   All records and information regarding the location of the Device from January 1, 2019 to the present;

      b.   any information recording Esquivel's schedule or travel from January 1, 2019 to the present;

3.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.